STATE OF NORTH CAROLINA v. WILFORD BENJAMIN SHELLY

No. COA05-1395

(Filed 2 January 2007)

**1. Confessions and Incriminating Statements— right to counsel—hope of leniency—totality of circumstances—failure to make written findings and conclusions**

A review of the totality of the circumstances revealed that the trial court did not err in a first-degree murder and conspiracy to commit first-degree murder case by admitting defendant's confession even though defendant alleged error including a violation of his right to counsel, the confession was made under the hope of leniency created by the interrogating officer, and the trial court failed to make written findings of fact and conclusions of law, because: (1) while there are no magic words which must be uttered in order to invoke one's right to counsel, a suspect must unambiguously request counsel to warrant the cessation of questions and must articulate his desire to have counsel present sufficiently clear that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney; (2) no reasonable officer would have understood defendant's words as an actual request for an attorney; (3) in no way did the pertinent officer badger, intimidate, or threaten defendant into waiving his rights, nor did he ignore an unambiguous invocation of defendant's right to counsel; (4) after obtaining an understanding of the process of having an attorney appointed, defendant chose to sign the waiver form and proceed with the interview; (5) defendant did not ask the investigating officer if he needed an attorney and was not told by the officer that he did not need one; (6) at no point did the officer block defendant's right to remain silent or defendant's ability to actually request an attorney; (7) the officer did not suggest that defendant might not receive appointed counsel, but instead merely informed defendant that the appointment of counsel would not occur immediately; (8) the officer did not promise any different or preferential treatment as a result of defendant's cooperation, but merely offered an opinion based on his professional experience; and (9) contrary to defendant's assertion, N.C.G.S. § 15A-977(f) does not mandate a written recording of findings and conclusions, the trial court provided its rationale from the bench, and there were no material conflicts in the evidence.

**2. Appeal and Error— preservation of issues—waiver— switching legal theories**

Although defendant contends the trial court erred by denying his motion to dismiss the charge of first-degree murder, this assignment of error has been waived, because: (1) defendant changed legal theories to support his position between the trial court and the Court of Appeals; and (2) assuming arguendo that defendant had properly presented his corpus delicti argument to the trial court and then to the Court of Appeals, it is without merit when in addition to defendant's confession the State presented evidence through the chief medical examiner that the victim died as a result of multiple gunshot wounds.

**3. Conspiracy— first-degree murder—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of conspiracy to commit first-degree murder, because: (1) evidence of a conspiracy may be circumstantial or inferred from defendant's behavior; (2) the crime of conspiracy does not require an overt act for its completion and the agreement itself is the crime; and (3) taking the evidence in the light most favorable to the State revealed that defendant and his cousin had fought with the victims on 1 January 2002, and later that day defendant and two others procured weapons, sought out the victims, and killed them.

**4. Homicide— first-degree murder—indictment—failure to allege each element—sufficiency**

Our Supreme Court has already concluded that an indictment charging defendant with first-degree murder is sufficient even though it does not allege every element of first-degree murder.

**5. Criminal Law— instruction—flight**

The trial court did not err in a first-degree murder and conspiracy to commit first-degree murder case by its instruction to the jury on flight, because: (1) evidence presented at trial established that defendant left the scene of the shooting and did not return home; but instead he spent the night at the home of his cousin's girlfriend; and (2) this action was not part of defendant's normal pattern of behavior and could be viewed as a step to avoid apprehension.

Appeal by Defendant from judgments entered 12 October 2004 by Judge James Floyd Ammons, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 6 June 2006.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

> *Stubbs, Cole, Breedlove, Prentis & Biggs, PLLC, by C. Scott Holmes, for Defendant-Appellant.*

STEPHENS, Judge.

Defendant appeals from judgments entered on jury verdicts finding him guilty of first-degree murder and conspiracy to commit first-degree murder in the death of Malcom Jackson. Defendant was sentenced to life imprisonment without parole on the conviction of first-degree murder and to a minimum term of 157 months and a maximum term of 198 months on the conviction of conspiracy to commit first-degree murder, with the sentences to run consecutively. At trial, the State's evidence tended to show the following:

On the afternoon of 1 January 2002, Andre Jackson ("A.J.") and his brother Malcom Jackson ("Malcom") were murdered beside a wooded dirt road near the Kelly Springfield plant in Cumberland County. Their friends Rodney Wilkerson ("Rodney") and Tracie New ("Tracie") witnessed the murders. The previous night, on New Year's Eve, A.J. and Defendant's uncle, Earl Shelly ("Earl"), had an altercation at Defendant's apartment. A.J. was removed from the apartment, but during the morning of 1 January 2002, returned with his brother Malcom and fought with Defendant and Defendant's cousin, Lamont Shelly ("Lamont").

Later that day, Defendant and Lamont drove to their grandmother's home to pick up Earl and then to Lamont's sister's home, where they picked up a 12-gauge shotgun. The three men returned to Defendant's apartment and located his .380 handgun. Later that same day, Rodney, Malcom, A.J., and Tracie were parked down a dirt road near the Kelly Springfield plant. Rodney, Malcom, and A.J. were in one car, while Tracie was alone in her own car.

At trial, Rodney testified that, while they were parked, he heard a car coming and saw Earl hanging out the window with a "big gun." Malcom got out and stood behind the driver's side door, while Rodney ran around to the back of the car and put his hands into the air. After Rodney was secure behind the car, he ran away from

the scene. As he was running, he heard a shot fired, glass shattering, and Malcom yelling.

Tracie testified she saw Malcom get out of the car and put his hands in the air before Earl shot him with the shotgun. The Shelly car then stopped, and Tracie saw Lamont get out of the car with a handgun and shoot Malcom in the head while Malcom was lying on the ground. She saw a third person in the Shelly vehicle, but could not identify that person. When Earl fired another shot through the windshield and hit A.J., Tracie drove away in her car.

After Rodney left the scene, he ran home and notified the police. Upon investigation, deputies found a car parked off a dirt road near the Kelly Springfield plant with the bodies of Malcom and A.J. lying near it on the ground. They found six 12-gauge shotgun shell casings and five .380 casings near the bodies. Dr. John D. Butts, Chief Medical Examiner for the State of North Carolina, determined that both A.J. and Malcom died as a result of multiple gunshot wounds. A Lorcin .380 Model L 380 handgun was recovered in the woods near the home of Defendant's cousin, Tommie Shelly. Also, a Mossberg Model 88 12-gauge shotgun was obtained from a source close to Defendant. A firearms expert examined the weapons and determined that the shell casings, buckshot and bird shot pellets, and bullets found at the scene and recovered from the bodies of the deceased, were fired from these weapons.

After speaking with Rodney, Tracie, and other parties, Cumberland County Sheriff's investigators identified Earl Shelly, Lamont Shelly, and Defendant as suspects. At the time of Defendant's detainment, on 2 January 2002, a .380 round of ammunition was found in his pocket.

Defendant was interviewed by investigators at the Cumberland County Sheriff's Office, where, after executing a General Adult Rights Form, he confessed to shooting Malcom in the head with the handgun. On 23 July 2002, a grand jury indicted Defendant on two charges of first-degree murder and two charges of conspiracy to commit first-degree murder, in the deaths of A.J. and Malcom.

Defendant's counsel filed a motion to suppress Defendant's confession and a supporting affidavit as required by N.C. Gen. Stat. § 15A-977. After hearing arguments on the motion, the trial court orally entered the following findings of fact into the record: (1) the interrogation occurred while Defendant was in custody and lasted approximately one hour; (2) Defendant asked "about whether an

attorney can come . . . up here and see me?"; (3) Defendant indicated, "I am very ignorant of all this"; (4) a conversation ensued about the availability of a public defender; and (5) Defendant never expressly stated that he wanted a lawyer present, did not understand his rights, or wanted to stop talking.

On these findings, the trial court denied Defendant's motion to suppress his confession. The case was then tried in Cumberland County Superior Court between 29 September and 8 October 2004. At the end of the trial, the jury found Defendant not guilty of first-degree murder or conspiracy to commit first-degree murder in the death of A.J. The same jury found Defendant guilty of first-degree murder and conspiracy to commit first-degree murder in the death of Malcom. From the judgments entered upon these convictions, Defendant appeals. We find no error.

[1] Defendant first assigns error to the trial court's admission of his confession. Defendant argues that his confession should have been suppressed because he invoked his right to counsel and it was not honored by the police; the police advised Defendant of his right to counsel and then effectively blocked the assertion of this right; the confession was made under the hope of leniency created by the interrogating officer; and the trial court failed to make written findings of fact and conclusions of law after the suppression hearing.

Defendant contends that the trial court's findings of fact and conclusions of law regarding the voluntariness of the confession constitute reversible error because there were material conflicts in the evidence during the motion to suppress hearing. That is, Defendant argues that the trial court erred in denying his motion to suppress the confession because there was competent evidence presented at the suppression hearing supporting his position that he invoked his right to counsel, the assertion of his right to counsel was blocked by the interrogating officer, and his confession was made under the hope of leniency. Findings of fact relating to the voluntariness of a confession are binding on our Court if supported by competent evidence in the record. *State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001). We may not set aside or modify findings substantiated by evidence, even if the evidence is conflicting. *State v. Jackson*, 308 N.C. 549, 304 S.E.2d 134 (1983) (citations omitted).

In determining whether the trial court's finding that Defendant's statement was voluntary is supported by competent evidence,

we must review the totality of the surrounding circumstances in which the statement was made. *State v. Brewington*, 352 N.C. 489, 532 S.E.2d 496 (2000), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001). A statement is involuntary or coerced if it is the result of government tactics so oppressive that the will of the interrogated party " 'has been overborne and his capacity for self-determination critically impaired[.]' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 36 L. Ed. 2d 854, 862 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 1057-58 (1961) (citation omitted)). Our Supreme Court has established several factors that should be considered in determining the voluntariness of statements:

> [W]hether defendant was in custody, whether he was deceived, whether his *Miranda* rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994) (citations omitted).

First, Defendant argues the trial court improperly determined that he failed to invoke his right to counsel and, consequently, we should view his statement as involuntary. Defendant cites *State v. Torres*, 330 N.C. 517, 412 S.E.2d 20 (1992), to support his contention that a defendant can invoke his right to counsel simply by asking a law enforcement officer if he needed a lawyer, since that question may indicate a desire to have the help of an attorney during police interrogation. While we acknowledge "there are no 'magic words' which must be uttered in order to invoke one's right to counsel," *id.* at 528, 412 S.E.2d at 26, we have, since *Torres*, held that "[a] suspect must unambiguously request counsel to warrant the cessation of questions and 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.' " *State v. Barnes*, 154 N.C. App. 111, 118, 572 S.E.2d 165, 170 (2002) (quoting *Davis v. United States*, 512 U.S. 452, 459, 129 L. Ed. 2d 362, 371 (1994)), *disc. review denied*, 356 N.C. 679, 577 S.E.2d 892 (2003). Until a suspect makes such an unambiguous request, the police may continue to question him. *Id.*

STATE v. SHELLY

[181 N.C. App. 196 (2007)]

During questioning, Defendant said to the investigator, Officer Disponzio, "I don't know if I go ahead an tell you then when I do get my lawyer . . . I've done wrong, because I went ahead and said anything or—I don't know." This statement is ambiguous because Defendant neither refused nor agreed to answer Officer Disponzio's questions without an attorney present. This ambiguous statement fails to meet the standard established by *Davis* and *Barnes* as a guide for police investigation and interrogation. We hold that no reasonable officer under the circumstances would have understood Defendant's words as an "actual request" for an attorney.

Additionally, questions from Defendant such as, "Oh, so I can have a lawyer come here now?", and "one won't be appointed to me now?", when examined in the context in which they were made, also fail to meet the current standard for invoking one's right to counsel. That is, after a thorough review of the interview transcript, we note the informative nature of the conversation between Defendant and the officer in the beginning of the interview, and believe that Defendant asked these questions and received answers from Officer Disponzio in an effort to understand his rights and the interview process before choosing to invoke or forego his constitutional right to counsel. In no way did Officer Disponzio badger, intimidate, or threaten Defendant into waiving his rights, nor did he ignore an unambiguous invocation of Defendant's right to counsel. For example, when Defendant asked these questions, Officer Disponzio offered a clear and truthful answer by telling Defendant that "unless you have your own personal lawyer . . . [o]ne will be appointed to you when you go to court." After obtaining an understanding of the process of having an attorney appointed, Defendant chose to sign the waiver form and proceed with the interview. Therefore, in asking these questions, we do not believe that Defendant unambiguously requested counsel.

Furthermore, Defendant's questions are clearly distinguishable from the circumstances present in *Torres*. For example, in *Torres*, the defendant " 'asked [Sheriff] Nelson [Sheppard] did she need a lawyer and he told her no that it was best right now to cooperate and tell the truth and that they had been friends for a long time.' " *Torres*, 330 N.C. at 523, 412 S.E.2d at 23. In this case, Defendant did not ask the investigating officer if he needed an attorney and was not told by the officer that he did not need one. Rather, Defendant asked general questions about his right to counsel and explained his discomfort with the situation in which he found himself. In return, the officer,

**STATE v. SHELLY**

[181 N.C. App. 196 (2007)]

after explaining to Defendant that "I can't legally tell you to do something[,]" informed him about the logistics of the process. Since Defendant did not clearly and unambiguously invoke his right to counsel, his statements to the officer were admissible.

Next, Defendant argues Officer Disponzio "blocked" the exercise of his right to counsel by emphasizing the difficulties and time delay involved in obtaining a court-appointed attorney. In support of his contention, Defendant cites *State v. Steptoe*, 296 N.C. 711, 252 S.E.2d 707 (1979). However, unlike the defendant in *Steptoe*, Defendant had not invoked his right to counsel or requested a court-appointed attorney during interrogation.

Defendant in this case never specifically requested that an attorney be present during interrogation and thus never invoked his right to counsel. Rather, Defendant made numerous ambiguous statements and asked numerous ambiguous questions. By way of explaining Defendant's options, Officer Disponzio responded, "[T]his is totally your choice. . . . No one can make you do anything." Officer Disponzio went on to explain:

> Tomorrow morning you'll have a first appearance in court. At that time the judge is gonna read you your rights . . . you'll tell him I need a public defender and he'll assign you one and then from there it's up to your public defender to come and contact you. We don't contact you any more after today.

Defendant then asked Officer Disponzio, "Would there be like—somebody to come up here and see me?", to which Officer Disponzio replied, "Today? Not today, no." While Officer Disponzio's responses to Defendant's questions were intended to eventually procure a voluntary statement from Defendant, at no point did Officer Disponzio "block" Defendant's right to remain silent or Defendant's ability to "actually request" an attorney.

Furthermore, Officer Disponzio did not suggest, as did the officer in *Steptoe*, that Defendant might not receive appointed counsel; instead, he merely informed Defendant that the appointment of counsel would not occur immediately. Thus, at no point was Defendant inhibited from unambiguously articulating his desire to have counsel present. On the contrary, as a result of Officer Disponzio's explanations, Defendant was fully informed of his rights and knowingly, understandingly and voluntarily waived his right to counsel, as evidenced by his execution of a waiver form. *See id.* at 717, 252 S.E.2d at 711. Accordingly, this argument is without merit.

Defendant further argues, however, that his statement was rendered involuntary by statements of the officer which created a hope of leniency. Specifically, Defendant contends that Officer Disponzio's comment, "I can tell you that a person who cooperates and shows remorse and is honest and has no criminal background—when it goes to court, has the best chance of getting the most leniency because he cooperated[,]" created a hope of leniency that induced Defendant to confess to the murder, where he would have otherwise made no statement. We disagree.

When evaluating the voluntariness of a confession, "[t]he proper determination is whether the confession at issue was the product of 'improperly induced hope or fear.'" *State v. Gainey*, 355 N.C. 73, 84, 558 S.E.2d 463, 471 (quoting *State v. Corley*, 310 N.C. 40, 48, 311 S.E.2d 540, 545 (1984)), *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002). For a confession to be held involuntary, the "improper inducement must promise relief from the criminal charge to which the confession relates, and not merely provide the defendant with a collateral advantage." *Gainey*, 355 N.C. at 84, 558 S.E.2d at 471 (citing *State v. Pruitt*, 286 N.C. 442, 212 S.E.2d 92 (1975)).

In this case, Officer Disponzio did not promise Defendant any different or preferential treatment as a result of Defendant's cooperation. The officer merely offered an opinion based on his professional experience. Thus, competent evidence supports the trial court's findings that no improper promises were made to Defendant to induce an involuntary confession. This argument is likewise without merit.

Finally, Defendant argues that the trial court erred by not making written findings of fact when it denied the motion to suppress his confession. North Carolina General Statute section 15A-977(f) states that, following a hearing on a motion to suppress evidence, "[t]he judge must set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2003). Defendant contends the statute mandates a written recording of these findings and conclusions. We disagree.

In *State v. Jacobs*, 174 N.C. App. 1, 8, 620 S.E.2d 204, 209 (2005), this Court determined that the trial court did not err when it failed to enter written findings because "the trial court did provide its rationale from the bench." The *Jacobs* Court further relied on a prior decision from our Supreme Court that determined "[i]f there is no material conflict in the evidence on voir dire, it is not error to admit the challenged evidence without making specific findings of fact. . . .

In that event, the necessary findings are implied from the admission of the challenged evidence." *Id.* (quoting *State v. Phillips,* 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980)). In this case, as in *Jacobs,* the trial court provided its rationale from the bench and there were no material conflicts in the evidence. Rather, the conflict occurred between how Defendant and the trial court interpreted his alleged assertion of his right to counsel and the facts surrounding this alleged assertion. Therefore, we find this argument without merit. Defendant's assignment of error relating to the admission of his confession is overruled.

---

By his next argument, Defendant contends that the trial court erred in denying his motion to dismiss the charges of first-degree murder and conspiracy to commit first-degree murder.

Upon a motion to dismiss, the trial court must determine whether there is substantial evidence, taken in the light most favorable to the State, of each essential element of the offense charged, or of a lesser offense included therein, and of the defendant's being the perpetrator of the offense. *State v. Powell,* 299 N.C. 95, 261 S.E.2d 114 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The evidence is considered in the

> light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*Powell,* 299 N.C. at 99, 261 S.E.2d at 117 (citing *State v. Thomas,* 296 N.C. 236, 250 S.E.2d 204 (1978); *State v. McKinney,* 288 N.C. 113, 215 S.E.2d 578 (1975)). The trial court is concerned only with the sufficiency of the evidence to go to the jury, and not the weight to be accorded the evidence. *State v. Thaggard,* 168 N.C. App. 263, 608 S.E.2d 774 (2005).

[2] We first address Defendant's argument regarding the charge of first-degree murder. When Defendant made his "motion for judgment of acquittal" before the trial court, he argued

as to Malcom Jackson, the only evidence that has been presented by the state concerning this defendant's involvement in the death of Malcom Jackson was through this defendant's testimony that there was an accidental discharge which occurred during a struggle, in an attempt to assist . . . his uncle . . . to keep Malcom from taking the shotgun away from his uncle.

It is clear from this statement that Defendant argued to the trial court that Malcom's death was accidental, and therefore, that the charge of first-degree murder, which by statute requires a "willful, deliberate, and premeditated killing," should have been dismissed. *See* N.C. Gen. Stat. § 14-17 (2003). However, in his brief to this Court, Defendant presents an argument based on the rule of *corpus delicti*. The *corpus delicti* rule requires "that there be corroborative evidence, independent of defendant's confession, which tended to prove the commission of the charged crime." *State v. Trexler*, 316 N.C. 528, 531, 342 S.E.2d 878, 880 (1986) (citations omitted). "The *corpus delicti* rule only requires *evidence aliunde* the confession which, when considered with the confession, supports the confession and permits a reasonable inference that the crime occurred." *Trexler*, 316 N.C. at 532, 342 S.E.2d at 880 (citing 30 Am.Jur.2d *Evidence* § 1142 (1967)). On appeal, the State asserts that because Defendant changed legal theories to support his position between the trial court and this Court, this assignment of error has been waived by Defendant. We agree.

The North Carolina Rules of Appellate Procedure govern the preservation of error for appellate review. The applicable rule provides:

In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be made the basis of an assignment of error in the record on appeal.

N.C. R. App. P. 10(b)(1). "Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order

to get a better mount in the appellate courts." *State v. Holliman,* 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (citations and quotations omitted); *see also State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988). When a party changes theories between the trial court and an appellate court, the assignment of error is not properly preserved and is considered waived. *Id.*

In the case currently before this Court, it is clear that Defendant has impermissibly changed theories between the trial court and the appellate Court. As a result, this argument has been waived. Moreover, assuming *arguendo* that Defendant had properly presented his *corpus delicti* argument to the trial court and then to this Court, we find it without merit. In addition to Defendant's confession, the State presented evidence, through Dr. Butts, the Chief Medical Examiner, that Malcom died as a result of multiple gunshot wounds. This evidence, along with Defendant's confession, is sufficient to support the trial court's decision to deny Defendant's motion to dismiss.

[3] We likewise are unpersuaded by Defendant's argument that the State failed to offer substantial evidence on the conspiracy charge to survive his motion to dismiss. "A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan,* 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citations omitted). This evidence may be circumstantial or inferred from the defendant's behavior. *See State v. Choppy,* 141 N.C. App. 32, 539 S.E.2d 44 (2000), *appeal dismissed and disc. review denied,* 353 N.C. 384, 547 S.E.2d 817 (2001). The crime of conspiracy does not require an overt act for its completion; the agreement itself is the crime. *State v. Bindyke,* 288 N.C. 608, 220 S.E.2d 521 (1975).

When taking the evidence in the light most favorable to the State, the evidence tended to show that Defendant and his cousin had fought with A.J. and Malcom on 1 January 2002. Later that day, Defendant, his cousin, and their uncle procured weapons, sought out A.J. and Malcom, and killed them. From these actions, a conspiracy can be inferred. Accordingly, this argument is overruled.

---

[4] Defendant next assigns error to the failure of the indictment to allege every element of first-degree murder. In *State v. Wallace,* 351 N.C. 481, 528 S.E.2d 326, *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d

498 (2000), our Supreme Court rejected the same argument that Defendant presents to this Court. Defendant acknowledges the prior decision by our State's high court and only raises the issue to preserve the error for a future appeal. Regardless, based on the direction provided by our Supreme Court, we must overrule this assignment of error.

---

**[5]** By his final argument, Defendant contends the trial court erred because there was insufficient evidence to support the court's instruction to the jury on "flight," that is, that he fled the scene of the crime. Judge Ammons instructed the jury within the guidelines provided by the North Carolina pattern jury instructions, as follows:

> Now, the State contends and the defendant denies that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amounted to an admission or a show of consciousness of guilt. However, proof of this circumstance is not sufficient in and of itself to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation or deliberation.

A jury instruction on flight is proper where " 'some evidence in the record reasonably support[s] the theory that defendant fled after commission of the crime charged.' " *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 434 (1990) (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). When there is some evidence, "it is the duty of the jury to determine whether the facts and circumstances support the State's theory." *State v. Goblet*, 173 N.C. App. 112, 120, 618 S.E.2d 257, 263 (2005) (citing *State v. Norwood*, 344 N.C. 511, 476 S.E.2d 349 (1996) (citations omitted), *cert. denied*, 520 U.S. 1158, 137 L. Ed. 2d 500 (1997)). "The relevant inquiry is whether the evidence shows that defendant left the scene of the crime and took steps to avoid apprehension." *State v. Grooms*, 353 N.C. 50, 80, 540 S.E.2d 713, 732 (2000) (citing *Levan*, 326 N.C. at 165, 388 S.E.2d at 429), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001).

Defendant relies on *State v. Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991), to support his contention that a jury instruction on flight was not warranted. In *Thompson*, the defendant assigned error to the trial court's decision *not* to provide his requested jury instruction on

flight. In rejecting the defendant's argument in that case, our Supreme Court determined that evidence showing that the defendant left the scene of the crime, drove to an off-limits area of a military base, stopped his vehicle next to a dumpster behind the officer's club, and drove off when approached by a military police car, standing "alone is not enough to warrant an instruction on flight." *Id.* at 490, 402 S.E.2d at 393. However, in *Thompson*, the military base to which the defendant drove was the same base to which he was stationed as a member of the United States Army. *Id.* Therefore, the defendant returned to a place where, if necessary, law enforcement officers could find him. Essentially, the defendant returned home.

Here, evidence presented at trial established that Defendant left the scene of the shooting and did not return home. Rather, he spent the night at the home of his cousin's girlfriend, an action that was not part of Defendant's normal pattern of behavior and could be viewed as a step to avoid apprehension. Accordingly, the trial court did not err in instructing the jury on flight.

In the trial of Defendant on charges of first-degree murder and conspiracy to commit first-degree murder, we find

NO ERROR.

Judges WYNN and GEER concur.

The judges concurred and submitted this opinion for filing prior to 31 December 2006.