STATE OF NORTH CAROLINA
v.
JOSE LUIS TORRES-GARCIA
No. COA09-409
Court of Appeals of North Carolina
Filed December 22, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.
Anne Bleyman, for defendant-appellant.
CALABRIA, Judge.
Jose Luis Torres-Garcia ("defendant") appeals the trial court's order denying his motion to suppress evidence. We affirm.
On 14 August 2007, Officers Wayne Irby ("Officer Irby") and Todd Watson ("Officer Watson")(collectively "the officers") of the Charlotte-Mecklenburg Police Department ("CMPD") were patrolling Interstates 77 and 85, when the officers spotted a gold Infinity ("the vehicle") with a broken rear vent window. Based on their experience, the officers believed that the broken window was an indication that the vehicle was stolen. The officers entered the vehicle's license plate into their database, and the license plate came back as belonging to a different vehicle. The officers then initiated a stop of the vehicle.
Officer Irby spoke to defendant, the driver of the vehicle, in Spanish, after determining that defendant spoke little English. Officer Irby was not certified by the CMPD as a Spanish speaking officer, but had studied Spanish in high school and college. Officer Irby explained to defendant the reason for the stop. During his conversation with defendant, Officer Irby determined that the vehicle was not stolen. However, defendant was operating the car without a driver's license and the license plate on the vehicle belonged to a different vehicle. Therefore, the officers issued defendant citations for driving without a license and having a fictitious license plate. They also removed the license plate from the vehicle, and Officer Irby explained to defendant that he would need to call someone for a ride. During this exchange, defendant was standing beside his vehicle.
While Officer Irby was speaking with defendant, Officer Watson noticed a can of engine grease on the floorboard of the backseat. Officer Watson explained that it was similar to a can he had seen recently in another case, which had a false bottom containing drugs. Officer Watson relayed this information to Officer Irby, and, after Officer Irby explained the citations to defendant, Officer Irby asked defendant if defendant had any drugs or weapons in the car. Defendant answered, "no," and Officer Irby then asked defendant if he could search the car, using the Spanish term "ravisar." According to Officer Irby, defendant answered, "si," which means, "yes," and nodded his head affirmatively. A videotape from the officer's vehicle was also introduced into evidence and shows defendant nodding his head and speaking with Officer Irby.
Officer Watson stayed in the car while Officer Irby requested consent to search to prevent an appearance of overwhelming show of force. After defendant consented to a search of the vehicle, the officers searched the car, opened the engine grease can, and found cocaine and heroin.
Defendant was arrested and indicted for the offenses of trafficking in heroin by transportation, trafficking in heroin, possession with intent to sell or deliver cocaine, and possession of heroin. Prior to trial, defendant filed a motion to suppress the evidence found in the search of the vehicle. A suppression hearing was held in Mecklenburg County Superior Court on 15 September 2008.
Defendant testified in his own defense at the suppression hearing. He testified that he had spoken to Officer Irby in Spanish during the stop and confirmed the events that occurred during the stop, including Officer Irby's explanation for the stop, the removal of the license plate, Officer Irby's instruction that defendant would need a ride, and the issuance of the citations. Defendant testified that he was confused about the citations, but explained that his confusion was related to the legal aspects of the citations, not what Officer Irby was saying.
Defendant also testified regarding the search of his vehicle. Defendant testified that Officer Irby asked for consent to search the vehicle and that he answered, "yes," while nodding his head in the affirmative. Defendant explained that the officer used the term "ravisar," which defendant understood to mean "can I search the car." Defendant also confirmed that the officer asked if defendant had any drugs or weapons and that he answered, "no." According to defendant, the officer did not explain that defendant had the option to deny the search. Defendant testified that he "just accepted it." Finally, defendant testified that the officers did not coerce him or force him to do anything against his will.
Following the hearing, the trial court denied defendant's motion to suppress and orally rendered findings of fact and conclusions of law. Defendant preserved his right to appeal the denial of the motion and then entered a guilty plea to the following offenses: trafficking in heroin by possession, possession with intent to sell or deliver cocaine, and trafficking in heroin by transportation. Defendant was sentenced to a minimum of 70 months to a maximum of 84 months in the North Carolina Department of Correction. Defendant appeals.
Defendant argues that trial court erred by not entering written findings of fact or conclusions of law. We disagree.
Our statutes require a trial court to "set forth in the record his findings of facts and conclusions of law" in ruling on a motion to suppress evidence. N.C. Gen. Stat. § 15A-977(f) (2007). However, the statute does not mandate a written order in all situations. State v. Shelly, 181 N.C. App. 196, 204, 638 S.E.2d 516, 523, disc. review denied, 361 N.C. 367, 646 S.E.2d 768 (2007). We have recently explained that "[t]his statute has been interpreted as mandating a written order unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." State v. Williams, ___ N.C. App. ___, ___, 673 S.E.2d 394, 395 (2009) (citing Shelly, 181 N.C. App. at 205, 638 S.E.2d at 523).
In the instant case, the trial court was not required to enter a written order. First, the trial court fully explained its ruling from the bench by orally rending findings of fact and conclusions of law. Next, our review of the record reveals that there were no material conflicts in the evidence. Both the officers and defendant gave the same narrative of the events occurring on 14 August 2007. Thus, there was no dispute regarding the stop, the events leading to the search, and the manner in which Officer Irby asked defendant for consent to search the vehicle. Because the conflict was in the interpretation of the evidence  whether the consent to search was voluntary  and not a conflict in the evidence itself, the trial court was not required to make written findings of fact and conclusions of law. See Shelly, 181 N.C. App. at 204-205, 638 S.E.2d at 523 (finding no material conflict in the evidence where the dispute was over the interpretation of the defendant's alleged assertion of his right to counsel). Accordingly, we conclude that the trial court did not err by failing to enter written findings of fact and conclusions of law. This assignment of error is overruled.
Defendant argues that the trial court erred in concluding that defendant voluntarily consented to the search. We disagree.
"Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether it's [sic] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." State v. Allison, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829-30 (2002) (citing State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). Here, defendant challenges the voluntariness of the consent, but does not challenge the sufficiency of any of the trial court's findings. Although defendant assigns error to several of the trial court's findings of fact, he does not set forth any argument to support these assignments of error. Therefore, defendant's assignments of error which challenge the sufficiency of the trial court's findings of fact are deemed abandoned. See N.C.R. App. P. 28(a) (2008) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief are deemed abandoned."); State v. Young, 186 N.C. App. 343, 350, 651 S.E.2d 576, 581 (2007), appeal dismissed, 362 N.C. 372, 662 S.E.2d 394 (2008). Because the trial court's findings of fact are not challenged, they are deemed to be supported by competent evidence and are binding on appeal. See State v. Roberson, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004). Accordingly, we review the trial court's order to determine only whether the findings of fact support the conclusion that defendant's consent to search was voluntary.
"When the State seeks to rely upon [a] defendant's consent to support the validity of a search, it has the burden of proving that the consent was voluntary." State v. Crenshaw, 144 N.C. App. 574, 579, 551 S.E.2d 147, 151 (2001) (internal quotation and citations omitted). When defendant's detention is lawful, as is the case here, the State must show "that defendant's consent to the search was freely given, and was not the product of coercion." Id. (internal quotation omitted). We recently explained the standard for determining whether consent to search is freely given:
"[T]he question whether a consent to a search [is] in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854, 862-63 (1973). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id. at 248-49, 93 S. Ct. at 2059, 36 L. Ed. 2d at 875.
State v. Kuegel, ___ N.C. App. ___, ___, 672 S.E.2d 97, 100 (2009).
Following the hearing, the trial court orally rendered the following findings of fact:
On or about August the 14th, 2007, the Defendant was driving a motor vehicle which was observed by Officer Irby and another member of the Police Department.
Officer Irby observed that the rear vent window was broken. . . . Based upon his training and experience, he knew that stolen vehicles often have rear windows broken. He stopped the Defendant and told him the reason for the stop.
. . . The stop took place just before sunset on Interstate 85, which was well traveled at the time.
Officer Irby had studied Spanish between four and six years and though not certified was able to make himself understood in Spanish. He spoke to the Defendant in Spanish.
The Defendant had eight, or so, years of schooling in Mexico and was unable to fully understand everything that the officer said.
The officer explained to the Defendant why the vehicle was pulled over. Before pulling over the Defendant, the Officer ran the vehicle's tag and it came back as belonging to another vehicle.
The officer issued a citation and tried to explain it to the Defendant. The officer then asked the Defendant if he could search the vehicle and the Defendant responded by nodding his head yes and verbally saying yes in Spanish.
There is no indication that the officer pressured the Defendant or otherwise coerced the Defendant. The officer did not, however, advise the Defendant that he had the option not to consent. The Defendant authorized the search, although he did not know that he had the right to refuse.
Based on the foregoing findings of fact, the trial court rendered the following conclusions of law:
The Defendant was not coerced in giving his permission to search the vehicle.
The Defendant's rights under the Constitution of the United States and of North Carolina and the Statutes of North Carolina were not violated.
Defendant argues that his consent was not voluntary, due to the following factors: (1) Officer Irby was not certified by the CMPD as a Spanish speaking employee, but nonetheless spoke to defendant in Spanish; (2) defendant had a limited understanding of his legal rights in the United States; and (3) Officer Irby did not inform defendant that he had a right to deny the search and defendant did not understand that he had such a right.
Although an individual's understanding of his right to refuse a search may be relevant to our determination, we do not find it dispositive. State v. Houston, 169 N.C. App. 367, 371, 610 S.E.2d 777, 780-81 (2005) ("Neither our state law nor federal law requires that any specific warning be provided to the party whose property is to be searched prior to obtaining consent for the consent to be valid."). Despite any language or cultural barriers defendant may have faced, the record does not indicate that defendant had any problems understanding Officer Irby throughout the entire conversation leading up to the search. Thus, based on the totality of the circumstances as set forth in these uncontested findings, we find that Officer Irby was able to effectively communicate with defendant, that defendant understood that Officer Irby was requesting consent to search, that defendant agreed to the search, and that defendant was not coerced or forced into giving consent. Accordingly, we hold that defendant's consent to the search was voluntary and not the product of unlawful coercion.
Affirmed.
Judges WYNN and STROUD concur.
Report per Rule 30(e).