IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-1374-2

Filed: 15 December 2020

Wake County, No. 16 CVS 12965

THE NEW HANOVER COUNTY BOARD OF EDUCATION, Plaintiffs,

v.

JOSH STEIN, in his capacity as Attorney General of the State of North Carolina, Defendant,

and

NORTH CAROLINA COASTAL FEDERATION and SOUND RIVERS, INC., Intervenors.

Appeal by plaintiff from order entered 12 October 2017 by Judge Paul C. Ridgeway in Wake County Superior Court. Originally heard in the Court of Appeals 20 June 2018. *De Luca v. Stein*, 261 N.C. App. 118, 820 S.E.2d 89 (2018). Upon remand from the Supreme Court of North Carolina by opinion issued 3 April 2020. *New Hanover Cty. Bd. of Educ. v. Stein*, 374 N.C. 102, 840 S.E.2d 194 (2020).

> *Stam Law Firm, PLLC, by Paul Stam and R. Daniel Gibson, for plaintiff-appellants.*

> *Attorney General Joshua H. Stein, by Deputy Solicitor General James W. Doggett and Special Deputy Attorney General Marc Bernstein, for defendant-appellee.*

> *No supplemental briefing by intervenors.*

TYSON, Judge.

I. Background

Smithfield Foods, Inc. and its subsidiaries: Brown's of Carolina, Inc., Carroll's Foods, Inc., Murphy Farms, Inc., Carroll's Foods of Virginia, Inc., and Quarter M Farms, Inc. (collectively, the "Companies"), own and operate swine farms throughout eastern North Carolina. In the mid-to-late 1990s, millions of gallons of swine waste overflowed the containment lagoons after storms and spilled into North Carolina waterways. The waste contaminated the waterways and impacted groundwater supplies.

The North Carolina Department of Justice Environmental Division (the "DOJ") filed a number of lawsuits against swine farms from which the waste had overflowed. *See, e.g.*, *Murphy Family Farms v. N.C. Dep't of Env't & Natural Res.*, 359 N.C. 180, 605 S.E.2d 636 (2004).

After months of negotiations, then Attorney General, Michael F. Easley, and the Companies entered into an agreement (the "Agreement") under which the Companies "agreed to lead the development and implementation of environmentally superior swine waste management technologies in North Carolina" and to pay for those costs.

The Companies additionally agreed to "pay each year for 25 years an amount equal to one dollar for each hog in which the Companies . . . have had any financial

interest in North Carolina during the previous year, provided, however, that such amount shall not exceed $2 million in any year."

The Attorney General retained sole authority under the Agreement to award and distribute funds held in a private bank account to organizations of his choosing, if the funds are "used to enhance the environment of the State." The Attorney General developed the Environmental Enhancement Grant Program (the "EEG Program") to receive requests and facilitate the administration of these funds.

The Attorney General, after receiving EEG Program recommendations, retains sole discretion to select recipients of the funds and to allocate the amount awarded to each recipient, up to $500,000 per award. Once the grant recipients are selected, the recipient requests reimbursement, and the Attorney General orders the bank to disburse the funds. Since the Agreement was signed, the Attorney General has selected and distributed more than $24 million dollars in payments. The recipients and programs are not limited to the geographical areas of swine production, water quality improvement, or elimination of pollution, but include conservation projects and storm sediment.

Former Plaintiff, Francis X. De Luca ("De Luca"), filed his complaint on 18 October 2016. De Luca sought to preliminary and permanently enjoin the Attorney General from distributing payments made pursuant to the Agreement to anyone other than the Civil Penalty and Forfeiture Fund. *See* N.C. CONST. art. IX, § 7(a)

("the clear proceeds of all penalties and forfeitures and of all fines collected . . . shall be faithfully appropriated and used exclusively for maintaining free public schools").

The Attorney General filed a motion to dismiss De Luca's complaint on 19 December 2016. Plaintiff amended his complaint to add the New Hanover County Board of Education ("the Board") as a Plaintiff and to substitute Josh Stein, the current Attorney General of North Carolina, as Defendant on 25 January 2017.

The superior court entered an order granting the Attorney General's motion for summary judgment on 12 October 2017. That same day, the superior court denied Plaintiffs' motion for summary judgment, dismissed Plaintiffs' complaint with prejudice, and dissolved the preliminary injunction. Plaintiffs filed their notice of appeal to this Court and a motion for temporary stay at the trial court on 25 October 2017.

This Court reversed the superior court. *See De Luca v. Stein*, 261 N.C. App. 118, 136, 820 S.E.2d 89, 100 (2018). Further, we held De Luca lacked standing to assert the civil penalty claim, but we determined the Board had standing as an "intended beneficiary of a portion of those monies." *Id*. at 126-28, 820 S.E.2d at 94-95. The Attorney General appealed to the Supreme Court based upon a dissent in this Court. De Luca did not seek review of his dismissal for lack of standing and subsequently filed a motion to be removed from the case. *New Hanover Cty. Bd. of Educ.,* 374 N.C. at 113, n.3, 840 S.E.2d at 202 n.3.

The day before oral arguments were heard at the Supreme Court, the Governor of North Carolina signed 2019 N.C. Sess. Laws 250 into law. The Board argued § 5.7 of 2019 N.C. Sess. Laws 250 ("§ 5.7") controlled the disposition of "the bulk of the money in controversy."

Our Supreme Court, over a dissent, reversed and remanded, holding these funds are not "the clear proceeds of all penalties and forfeitures and of all fines collected . . . shall be faithfully appropriated and used exclusively for maintaining free public schools." N.C. CONST. art. IX, § 7(a). The Supreme Court "remand[ed] this case to the Court of Appeals for any additional proceedings not inconsistent with this opinion." *New Hanover Cty. Bd. of Educ.,* 374 N.C. at 123-24, 840 S.E.2d at 209.

In a subsequent Order, the Supreme Court deleted a portion of footnote 8 in its opinion and substituted in part:

> [T]he parties agreed that the provisions of newly-enacted N.C.G.S. § 147-76.1 *would not have the effect of mooting this appeal* . . . we will refrain from attempting to construe N.C.G.S. § 147-76.1 or to apply its provisions to the facts of this case. We express no opinion as to what effect, if any, N.C.G.S. § 147-76.1 has on the agreement or on any past or future payments made thereunder.

*New Hanover Cty. Bd. of Educ.,* 374 N.C. 260, n.8, 840 S.E.2d at 209 n.8 (emphasis supplied).

## II. <u>Jurisdiction</u>

This case returns to this Court upon remand from the Supreme Court of North Carolina "to the Court of Appeals for any additional proceedings not inconsistent with this opinion." *New Hanover Cty. Bd. of Educ.,* 374 N.C. at 123-24, 840 S.E.2d at 209. No issue of Plaintiff's lack of standing was raised before or ruled against the Board in the Supreme Court nor does the Attorney General assert the Board's lack of standing in supplemental briefing before this Court.

III. <u>Summary Judgment Against the Board</u>

Section 5.7 became effective 1 July 2019 and provides:

> SECTION 5.7.(a) Article 6 of Chapter 147 of the General Statutes is amended by adding a new section to read:
> § 147-76.1. Require deposit into the State treasury of funds received by the State. (a) Definition. –For purposes of this section, the term "cash gift or donation" means *any funds provided*, without valuable consideration*, to the State*, for use by the State, *or for the benefit of the State*. (b) Requirement. –Except as otherwise specifically provided by law, all funds received by the State, including cash gifts and donation, shall be deposited into the State treasury. *Nothing in this subsection shall be construed as exempting from the requirement set forth in this subsection funds received by a State officer* or employee acting on behalf of the State. (c) Terms Binding. –Except as otherwise provided by subsection (b) of this section, the terms of an instrument evidencing a cash gift or donation are a binding obligation of the State. *Nothing in this section shall be construed to supersede*, or authorize a deviation from the terms of an instrument evidencing a gift or donation setting forth *the purpose for which the funds may be used*.

2019 N.C. ALS 250, 2019 N.C. Sess. Laws 250, 2019 N.C. Ch. 250, 2019 N.C. HB 200 (emphasis supplied). *See also* N.C. Gen. Stat. § 147-76 (2019).

The Board argues "no genuine issue of material fact exists that, the Attorney General received funds for the benefit of the State for a specific purpose and they are entitled to relief under § 5.7. As noted by the Supreme Court, both parties concede § 5.7 did not moot the case. 374 N.C. 260, n.8, 840 S.E.2d at 209 n.8. The Attorney General's supplemental brief "[did] not want to take a position on behalf of the Attorney General's office on specifically how § 5.7 would be enforced."

Neither party asserts there are any disputed facts to require further remand to the superior court. Our Supreme Court remanded to this Court to determine "any additional proceedings not inconsistent with this opinion," and that remand includes determination of the applicability of the statute in question. *New Hanover Cty. Bd. of Educ.,* 374 N.C. at 124, 840 S.E.2d at 209.

The Attorney General is an agent in the executive branch of the State. Pursuant to the Agreement, he retains sole authority to determine recipients and order disbursement of the public funds held in a private bank account. Section 5.7 mandates "all funds received by the State, including cash gifts and donations, shall be deposited into the State treasury." N.C. Gen. Stat. § 147-76.1.

The Attorney General agrees he "accepts the funds [from the Companies] on behalf of the State." Section 5.7 controls the disposition of "all funds received by the State," whether cash gifts or donations. The statute clearly mandates these are

public funds, they belong to the taxpayers of this State, and are required to "be deposited into the State treasury." N.C. Gen. Stat. § 147-76.1.

We disagree with our dissenting colleague that § 5.7 cannot apply to the case before us because of the date of its enactment. The Attorney General did not raise that issue on appeal, and he further agrees "courts may sometimes apply new law to the facts of a case even if the new law postdates the complaint." Our courts have held, "[t]he general rule is an appellate court *must* apply the law in effect at the time it renders its decision." *State v. Currie*, 19 N.C. App. 241, 243, 198 S.E.2d 491, 493 (1973) (citations omitted) (emphasis supplied).

An exception to the general rule exists if applying the statute "would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711, 40 L. Ed. 2d 476, 488 (1974). The Attorney General does not argue applying § 5.7 to this case would result in "manifest injustice." Nor does the Attorney General argue there is statutory direction not to apply § 5.7 to pending litigation, nor is there any legislative history to indicate that § 5.7 does not to apply to these admittedly public funds.

Section 5.7 applies to "all funds received by the State" and appellate courts must apply the law in effect at this time. *Currie*, 19 N.C. App. at 243, 198 S.E.2d at 493. Section 5.7 applies to all present and future funds paid under the Agreement and mandates their deposit into the State treasury.

> The legislative branch of government is without question the policy-making agency of our government. The General Assembly is well equipped to weigh all the factors surrounding a particular problem, balance the competing interests, provide an appropriate forum for a full and open debate, and address all of the issues at one time.

*Cooper v. Berger*, ___ N.C. App. ___, ___, 837 S.E.2d 7, 21 (2019) (citations and alterations omitted), *disc. review allowed*, 373 N.C. 584, 837 S.E.2d 886 (2020). Both chambers of the legislature enacted, and the Governor signed § 5.7 into law the day before the Supreme Court heard other issues on appeal in this case. The applicability of § 5.7 to these facts is properly before us. As purely a question of law on undisputed facts, there is no need for remand to the trial court.

## IV. Amended Complaint Claim § 5.7

Rather than arguing the application of § 5.7 would result in manifest injustice or provide a statutory direction to the contrary, the Attorney General argues the Board is seeking an entirely new claim for relief. The dissenting opinion overly generalizes precedent and states the Board's arguments concerning § 5.7 are novel. The Board's allegations are sufficient to provide the Attorney General with notice of the transactions and occurrences showing entitlement to relief and is well within the scope of this Court's jurisdiction.

Rule 8 of the Rules of Civil Procedure only requires a "short and plain statement" of "the transactions, occurrences, or series of transactions or occurrences." The only question is whether the complaint "gives notice of the events and

transactions" that allows "the adverse party to understand the nature of the claim." *Haynie v. Cobb,* 207 N.C. App. 143, 149, 698 S.E.2d 194, 199 (2010).

Similarly, "[t]he prayer for relief does not determine what relief ultimately will be awarded. Instead, the court should grant the relief to which a party is entitled, whether or not demanded in his pleading." *Holloway v. Wachovia Bank & Trust Co.*, 339 N.C. 338, 346, 452 S.E.2d 233, 237-38 (1994).

North Carolina Rules of Civil Procedure Rule 54(c) specifically provides "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." N.C. Gen. Stat. § 1A-1, Rule 54(c) (2019). Rule 54(c)'s purpose is to provide "whatever relief is supported by the complaint's factual allegations and proof at trial." *Holloway*, 339 N.C. at 346, 452 S.E.2d at 237. If the party makes a demand for relief, it is "not crucial that the wrong relief had been demanded." *Id.* at 346, 452 S.E.2d at 238 (citations omitted).

The Board's original prayer for relief seeks deposit of these funds into the State treasury in the Civil Penalty and Forfeiture Fund, and the pleadings cite Article IX of the North Carolina Constitution. The complaint alleges the Attorney General, while representing and as an agent of the State "entered into an agreement with [the Companies]" and attaches a copy of that Agreement.

The amended complaint also alleges the Companies are depositing $2 million dollars of admittedly public funds per year into a private bank account for public environmental purposes and under the Agreement, the Attorney General purports to exercise sole authority to allocate and distribute these sums to his chosen recipients. The Board requested a preliminary and permanent injunction against the Attorney General to prevent distribution of these funds. The prayer for relief alleges a current and ongoing course of future payments of public funds under the Agreement.

These allegations provide sufficient notice to the Attorney General and states a claim under § 5.7. Whether the funds should be deposited into the State treasury for further appropriation and distribution or be earmarked for the Civil Penalty and Forfeiture Fund is immaterial as juxtaposed with deposits of public funds into a private bank account with distributions therefrom and recipients thereof within the Attorney General's sole discretion and control. The Board's complaint states a claim for relief. *See id.* at 345-46, 452 S.E.2d at 237-38.

Our Supreme Court remanded to this Court the task of determining additional proceedings regarding § 5.7. *New Hanover Cty. Bd. of Educ.*, 374 N.C. at 124, 840 S.E.2d at 209. This Court "must apply the law in place at the time it renders its decision." *Currie*, 19 N.C. App. at 243, 198 S.E.2d at 493. The Board's amended complaint "gives notice of the events and transactions" and allows "the adverse party to understand the nature of the claim." *Haynie,* 207 N.C. App. at 149, 698 S.E.2d at

199. This Court may issue an opinion and judgment and grant relief to which the party is entitled, even if the party has not demanded such relief in his pleadings." N.C. Gen. Stat. § 1A-1, Rule 54(c).

## V. <u>North Carolina Constitution</u>

"Legislative—rather than executive—authority over the State's expenditure of funds was intrinsic to the State's founding." *Cooper v. Berger*, ___ N.C. App. at ___, 837 S.E.2d at 16 (citations and internal quotations omitted). In *Cooper v. Berger*, the Governor claimed the right to allocate certain federal grants designated to the State.

The General Assembly disagreed and passed their budget to prevent the Governor from access to the federal grants. *Id*. at ___, 837 S.E.2d at 12. This Court relied upon the North Carolina Constitution and the General Assembly's authority and purpose to appropriate federal funds and grants, and held the General Assembly rightfully reallocated the funds. *Id*. at ___, 837 S.E.2d at 9-16. "Nothing shows that the founders of this State, in drafting our Constitution, intended for the Executive Branch to wield such authority over a category of funds . . . and that it could do so free from legislative control, appropriation, and substantial oversight." *Id*. at ___, 837 S.E.2d at 21-22.

North Carolina's courts have not permitted members of the executive branch to exercise unbridled appropriation or expenditure of unbudgeted public funds. "The Attorney General is not only the State's chief law enforcement officer but a steward

of our liberties." *In re Investigation by Attorney General*, 30 N.C. App. 585, 589, 227 S.E.2d 645, 648 (1976).

The stated purpose of the public funds being used for environmental purposes was not changed by the statute. The statute mandates the location and depository where the public money is to be deposited and held. All funds due or held under the Agreement must be paid and deposited into the State treasury, rather than into a private bank account under the exclusive control and discretion of the Attorney General.

Further, "[p]ursuant to Section 7(2) of Article III of the North Carolina Constitution, it shall be the duty of the Attorney General: (6) To pay all moneys received for debts due or penalties to the State immediately after the receipt thereof into the treasury." N.C. Gen. Stat. § 114-2(6) (2019). Our Supreme Court held "the payments contemplated by the agreement did not constitute penalties[.]" *New Hanover Cty. Bd. of Educ.,* 374 N.C. at 123, 840 S.E.2d at 209. Where the "debts due" and amounts currently held, and where future annual payments are to be paid to the State pursuant to the Agreement, are not in dispute. *See* N.C. Gen. Stat. § 147-76.1(b).

The State Treasurer must receive, hold, and account for the disbursement of these funds in accordance with the stated environmental purposes in the Agreement. "No money shall be drawn from the State treasury but in consequence of

appropriations made by law, and an accurate account of the receipts and expenditures of State funds shall be published annually." N.C. Const. art. V, § 7(1). Section 5.7 requires all public funds held and due under the Agreement from the Companies to be deposited into the State treasury. N.C. Gen. Stat. § 147-76.1.

## VI. Conclusion

> (a) Definition. –For purposes of this section, the term "cash gift or donation" means any funds provided, without valuable consideration, to the State, for use by the State, or for the benefit of the State. (b) Requirement. –Except as otherwise specifically provided by law, all funds received by the State, including cash gifts and donation, shall be deposited into the State treasury. *Nothing in this subsection shall be construed as exempting from the requirement set forth in this subsection funds received by a State officer or employee acting on behalf of the State.*

N.C. Gen. Stat. § 147-76.1(a)-(b) (emphasis supplied).

"[A]n appellate court must apply the law in effect at the time it renders its decision." *Currie*, 19 N.C. App. at 243, 198 S.E.2d at 493 (citations omitted). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citations omitted).

No party challenged the Board's standing to seek funds from that public source for the benefit of New Hanover County public schools and their programs, consistent with the environmental purposes for which the funds may be used. "[T]he legal

theory set forth in the complaint does not determine the validity of the claim[.]" *Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004) (citation omitted). "Rule 54(c) provides that every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *Holloway*, 339 N.C. at 345, 452 S.E.2d at 237 (internal quotation marks omitted).

In the absence of any disputed issues of fact and the applicability of the statute purely a question of law, we reverse and remand to the trial court for entry of an order to compel the Companies and the Attorney General to transfer and deposit all funds presently held and those to be paid and received from the Companies under the Agreement in the future into the State treasury in compliance with § 5.7. N.C. Gen. Stat. § 147-76.1. *It is so ordered.*

REVERSED AND REMANDED.

Judge BERGER concurs.

Judge BRYANT dissents with separate opinion.

No. COA17-1374-2 – *New Hanover Cty. Bd. of Educ. v. Stein*

BRYANT, Judge, dissenting.

## I. Introduction

The majority has held that the trial court erred in granting summary judgment in favor of the State based on 2019 N.C. Sess. Laws 250, sec. 5.7(a), (c) (codifying N.C. Gen. Stat. § 147-76.1, effective 1 July 2019). Because I do not believe the New Hanover County Board of Education ("the Board") has standing to argue this issue, I respectfully dissent from the majority's opinion reversing and remanding this case.

## II. Standing

In its original appeal to this Court, the Board did not raise the issue of sec. 5.7. It could not, as that law was only passed during the pendency of the appeal. This Court did not address that issue. Nor, as the majority concedes, did our Supreme Court address the issue, save in a footnote, noting that "we will refrain from attempting to construe N.C.G.S. § 147-76.1 or to apply its provisions to the facts of this case. We express no opinion as to what effect, if any, N.C.G.S. § 147-76.1 has on the agreement or on any past or future payments made thereunder." *New Hanover Cty. Bd. of Educ. v. Stein*, 374 N.C. 102, 124 n.8, 840 S.E.2d 194, 209 n.8 (2020) *as modified*, 374 N.C. 260 (N.C. May 18, 2020).

In short, neither the trial court, this Court, nor our Supreme Court initially addressed this issue. Rather, in consideration of the issue before it, our Supreme Court held that

> the Court of Appeals erred by determining that the record disclosed the existence of genuine issues of material fact that precluded the entry of summary judgment in favor of either party and remanding this case to the Superior Court, Wake County, for a trial on the merits, . . . [and that] the trial court correctly decided to enter summary judgment in favor of the Attorney General on the grounds that the payments contemplated by the agreement did not constitute penalties for purposes of article IX, section 7.

*Id*. at 123, 840 S.E.2d at 209. The Supreme Court remanded the matter to this Court "for any additional proceedings not inconsistent with this opinion." *Id*. at 124, 840 S.E.2d at 209.

The issue raised by the Board concerning sec. 5.7 is novel. It was not addressed by the trial court, nor by our Supreme Court. It is not, therefore, an "additional proceeding" as contemplated by the Supreme Court's mandate, but an entirely new proceeding which a trial court of competent jurisdiction must rule on before this Court may consider arguments. The majority's statement that the Supreme Court's "remand includes determination of the applicability of the statute in question," is simply not the case.

"Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Shelly,*

181 N.C. App. 196, 206–07, 638 S.E.2d 516, 524 (2007) (citation omitted). Given that the Board has not yet raised this issue before the trial court, it is clear that the issue of sec. 5.7 was not a suitable "additional proceeding" as expressed by the Supreme Court's mandate. "On the remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure from the mandate of the appellate court." *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 306 (1962) (citation omitted). Our review on remand is properly limited to those issues the Board previously raised—sec. 5.7 is not among them.

Nor do I believe that the Supreme Court's mandate enables us to consider issues not properly raised before the trial court. Our jurisdiction as an appellate court is well-defined. *See* N.C. Const. art. IV, § 12(1) ("The Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe."); N.C. Gen. Stat. § 7A-26 ("[T]he Court of Appeals . . . ha[s] jurisdiction to review upon appeal decisions of the several courts of the General Court of Justice and of administrative agencies, upon matters of law or legal inference, in accordance with the system of appeals provided in this Article."). I am unaware of any precedent which would permit us to overstep our jurisdictional authority and consider this issue for the first time on appeal. The majority's references to Rule 8 and Rule 54(c) of the Rules of Civil Procedure as allowing relief to a party even if the party has not demanded such relief in its pleadings is inapposite. The Rules of Civil Procedure apply to our trial courts.

3

*See* N.C. Gen. Stat. § 1A-1, Rule 1 ("Scope of Rules") ("These rules shall govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature except when differing procedure is prescribed by statute."); *cf.* N.C.R. App. P. Rule 1(b) ("Scope of Rules") ("These rules govern procedure in all appeals from the courts of the trial division to the courts of the appellate division. . . .). The majority points to no authority which authorizes this appellate court to act with the statutory authority conferred upon our trial courts to enter civil judgments pursuant to Rule 54(c). Our appellate courts are authorized to determine whether the trial courts properly applied the Rules of Civil Procedure. We are not authorized to substitute those rules for the rules which govern our review on appeal.

### III. Conclusion

I believe the appropriate venue for the Board's claim under sec. 5.7 is in the trial court. It is premature for this Court to rule on such a claim before a trial court has done so. I would therefore dismiss any arguments concerning sec. 5.7 as unripe and hold that the Board lacks the standing to raise them until they have been addressed by a trial court of competent jurisdiction. In accordance with the Supreme Court's mandate, and as stated in my previous dissent in this matter, I would find no error in the trial court's ruling to grant summary judgment in favor of the State.

For the foregoing reasons, I respectfully dissent.

4