STATE OF NORTH CAROLINA v. JOHN WESLEY BARNES

No. COA01-824

(Filed 19 November 2002)

## 1. Confessions and Incriminating Statements— voluntariness—use of false statements or trickery—intoxication at time of confession

The totality of circumstances revealed that the trial court did not err in an attempted statutory rape of a person between the ages of thirteen and fifteen case by denying defendant's motion to suppress his statements to an officer concerning the sexual assault of defendant's daughter even though defendant contends the statements were made involuntarily and violated his due process rights allegedly based on the false information given to defendant by an officer about the pregnancy of defendant's daughter and based on defendant's prior consumption of prescription drugs and alcohol, because: (1) the use of false statements and trickery by police officers during interrogations is not illegal as a matter of law; (2) the tactics used did not implant fear of physical violence or hope of better treatment; (3) defendant was not tricked about the nature of the crime involved or possible punishment; (4) the officer did not subject defendant to threats of harm, rewards for confession, or deprivation of freedom of action; (5) the evidence in the record does not show an oppressive environment; (6) a defendant's intoxication at the time of a confession does not preclude a conclusion that a defendant's statements were freely made, and the record does not show that defendant was so heavily under the influence that he could not understand the implications of confessing to sexually assaulting his daughter; (7) defendant's own testimony was the only evidence tending to prove any use of prescription drugs and alcohol; and (8) defendant was able to relate the events of 20 July 1998 to a degree of detail inconsistent with someone who was impaired and unaware of the meaning of his words.

## 2. Confessions and Incriminating Statements— custodial interrogation—invocation of right to counsel

The totality of circumstances revealed that the trial court did not err in an attempted statutory rape of a person between the ages of thirteen and fifteen case by denying defendant's motion to suppress his statements to an officer concerning the sexual

assault of defendant's daughter even though defendant contends the circumstances surrounding the interview constituted a custodial situation requiring that he be given Miranda warnings, because: (1) defendant went to the sheriff's department voluntarily; (2) an officer told defendant that he was free to leave and that he did not have to answer questions; (3) defendant was not subjected to a degree of restraint associated with a formal arrest when defendant was placed in an unlocked interview room without handcuffs, defendant was free to visit the restroom and smoke a cigarette while in the company of a single officer, and defendant was allowed to leave the sheriff's department after the interview concluded; and (4) defendant did not invoke his right to counsel by merely asking whether he needed an attorney without stating that he actually wanted an attorney.

Appeal by defendant from judgment dated 5 March 2001 by Judge James R. Vosburgh in Superior Court, Beaufort County. Heard in the Court of Appeals 17 April 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas O. Lawton III, for the State.*

*McCotter, McAfee & Ashton, PLLC, by Rudolph A. Ashton, III and Robert J. McAfee, for defendant-appellant.*

McGEE, Judge.

John Wesley Barnes (defendant) was indicted on 10 August 1998 for attempted statutory rape, statutory rape, statutory sexual offense of a person under thirteen years old, indecent liberties with a child, and incest of his thirteen-year-old daughter. Defendant filed a motion to suppress on 16 February 1999, seeking to exclude statements made by defendant to law enforcement officers.

A hearing was held on defendant's motion to suppress on 13 September 1999. The State presented the testimony of Laurel Miller (Officer Miller), an investigator with the Beaufort County Sheriff's Department. Officer Miller testified that a complaint was filed with the Sheriff's Department in the summer of 1998 concerning sexual abuse of defendant's daughter, and that after investigation, it was determined that defendant was a suspect. Defendant called the Sheriff's Department on 19 July 1998 to inquire whether any warrants had been issued for his arrest. Defendant was told there were no warrants for his arrest, but that accusations had been made against him.

Officer Miller testified that defendant voluntarily came to the Sheriff's Department the following day and met with her. They talked in an interview room with the door closed, but unlocked. Officer Miller testified she told defendant he was not under arrest and was free to leave at any time. She testified defendant did not ask for an attorney. During the conversation, defendant did ask to go to the restroom. A male investigator unlocked the men's bathroom door and waited outside for defendant. Defendant later asked to take a cigarette break. Defendant and Officer Miller left the interview room and smoked cigarettes outside the building.

During the interview, Officer Miller told defendant that his daughter was pregnant. Officer Miller testified she had no evidence that this statement was true. However, she used the statement as an "investigative technique" because the victim told Officer Miller that her father's greatest fear was that she might be pregnant, and "that if [defendant] was in fact having sex with [his daughter] that this would cause him to tell the truth about it." Defendant later wrote his own statement admitting he sexually assaulted his daughter. He then left the Sheriff's Department. Defendant was arrested later that week.

Defendant testified at the suppression hearing that when he arrived at the Sheriff's Department and met Officer Miller, he

> walked in and sat down [] and [Officer Miller] said, 'I want to ask you a few questions,' and I said 'Do I need a lawyer?' . . . [S]he said, 'No,' we [were] just going to have a little chit-chat between me and her and that was it. And then she started asking me questions and stuff.

Defendant also testified he had been drinking and taking "Valiums and Preludes" the morning that he went to the Sheriff's Department.

The trial court denied defendant's motion to suppress in an order entered 11 May 2001, *nunc pro tunc* October 2000. Defendant pled guilty on 5 March 2001 to attempted statutory rape of a person between the ages of thirteen and fifteen. The State dismissed the remaining charges. The transcript of plea noted the State and defendant agreed defendant retained the right to appeal the denial of his motion to suppress. *See* N.C. Gen. Stat. § 15A-979(b) (2001).

### I.

[1] Defendant first argues the trial court erred in denying his motion to suppress statements he made to Officer Miller concerning the sex-

ual assault of defendant's daughter. Defendant contends the statements were made involuntarily and therefore his due process rights were violated.

Defendant also argues he did not receive any *Miranda* warnings. Defendant asserts that because of the false "information" given to him by Officer Miller about his daughter's pregnancy, he confessed against his will. He further contends his prior consumption of prescription drugs and alcohol altered his mental state, resulting in his confession of sexually assaulting his daughter. He contends the totality of the circumstances constituted police coercion which extracted an involuntary confession. Therefore, the trial court's denial of his motion to suppress violated his Fourteenth Amendment due process rights.

The false statement made by Officer Miller about defendant's daughter being pregnant is insufficient to render defendant's confession inadmissible. As defendant acknowledges, the use of false statements and trickery by police officers during interrogations is not illegal as a matter of law. Our Supreme Court stated in *State v. Jackson* that:

> The general rule in the United States, which this Court adopts, is that while deceptive methods or false statements by police officers are not commendable practices, standing alone they do not render a confession of guilt inadmissible. The admissibility of the confession must be decided by viewing the totality of the circumstances, one of which may be whether the means employed were calculated to procure an untrue confession.

308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983) (citations omitted).

This Court agrees with defendant that deceptive law enforcement tactics and false statements during questioning are not commendable practices. However, only in limited circumstances are deceptive methods and attendant consequences sufficient to render a confession invalid. The admissibility of a confession under the shadow of false inducing statements by law enforcement hinges on the totality of the circumstances surrounding the confession. *Jackson*, 308 N.C. at 574, 304 S.E.2d at 148. To determine whether a confession is voluntary, the question to be answered is whether a defendant's will was overborne when he incriminated himself. If so, the confession was not the result of a rational, willful decision to confess. *Lynumn v. Illinois*, 372 U.S. 528, 534, 9 L. Ed. 2d 922, 926 (1963).

STATE v. BARNES

[154 N.C. App. 111 (2002)]

The purpose behind placing restraints on law enforcement when interviewing suspects is to avoid forcing false confessions or coerced confessions; however, the ability of investigators to procure voluntary confessions should not be undermined. *See generally State v. Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (2001); *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983). For this reason, deceiving suspects, while not commendable, is insufficient to suppress a confession. *Jackson*, 308 N.C. at 574, 304 S.E.2nd at 148.

Findings of fact relating to the voluntariness of a confession are binding on our Court if supported by competent evidence in the record. *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826. We may not set aside or modify findings substantiated by evidence, even if the evidence is conflicting. *Jackson*, 308 N.C. at 569, 304 S.E.2d at 145 (citations omitted).

While the record supports defendant's assertion that his worst fears were realized upon hearing that his daughter was pregnant, the type of fear that justifies suppression of a confession involves threats of violence or harsh treatment by law enforcement, especially if better treatment is offered in exchange for a confession. *See State v. Pruitt*, 286 N.C. 442, 212 S.E.2d 92 (1975); *State v. Rook*, 304 N.C. 201, 218-19, 283 S.E.2d 732, 742-43 (1981). In the case before us, the tactics used did not implant fear of physical violence or hope of better treatment. *Cf. State v. Simpson*, 299 N.C. 335, 345, 261 S.E.2d 818, 824 (1980).

Deception is only one factor to be considered when looking at the totality of the circumstances surrounding defendant's confession. In the case before us, other circumstances of defendant's confession do not support a conclusion that the confession was involuntary. Defendant was not tricked about the nature of the crime involved or possible punishment. Officer Miller did not subject defendant to threats of harm, rewards for confession, or deprivation of freedom of action. In fact, defendant exercised his freedom of action by leaving the Sheriff's Department at the end of the interview. *See Jackson* at 577, 304 S.E. 2d at 149-50.

The evidence in the record does not show an oppressive environment. As in *Rook*, a single interviewer conducted the interview. Nothing in the record suggests Officer Miller used threats or a show of violence. Further, defendant was not subjected to physical touching or bodily harm. For these reasons, the unsubstantiated statement

about his daughter's pregnancy was insufficient to render defendant's incriminating statements involuntary.

Defendant also argues his prior consumption of prescription drugs and alcohol makes his incriminating statements involuntary. However, a defendant's intoxication at the time of a confession does not preclude a conclusion that a defendant's statements were freely made. "An inculpatory statement is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words." *State v. Oxendine*, 303 N.C. 235, 243, 278 S.E.2d 200, 205 (1981). The record does not show defendant was so heavily under the influence that he could not understand the implications of confessing to sexually assaulting his daughter. There was no evidence defendant was unable to walk or carry on a normal conversation. Defendant's own testimony was the only evidence tending to prove any use of prescription drugs and alcohol, and defendant contends only that he was under the influence of alcohol and perhaps prescription drugs. Lastly, defendant was able to relate the events of 20 July 1998 to a degree of detail inconsistent with someone who was impaired and unaware of the meaning of his words.

The trial court's findings of fact are supported by competent evidence in the record. The totality of the circumstances surrounding the interview show that defendant's confession was voluntary and that Officer Miller did not extract defendant's confession. Therefore, the trial court did not err in admitting defendant's statements.

## II.

[2] Defendant next argues the trial court erred in denying his motion to suppress his statements because the circumstances surrounding the interview constituted a custodial situation requiring that he be given *Miranda* warnings. Defendant argues that by asking whether he needed an attorney while in custody, he invoked his right to counsel, rendering inadmissible the confession that followed.

An entitlement to *Miranda* warnings attaches only when a defendant is in custody. *State v. Gregory*, 348 N.C. 203, 207, 499 S.E.2d 753, 757, *cert. denied*, 525 U.S. 952, 142 L. Ed. 2d 315 (1998). If *Miranda* warnings are not administered in custodial situations, a strong presumption arises against the admissibility of statements made by a defendant. *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826 (citing *Oregon v. Elstad*, 470 U.S. 298, 306-07, 84 L. Ed. 2d 222, 230-31 (1985)).

To determine whether a defendant is entitled to *Miranda* warnings, the initial inquiry is whether a defendant was "in custody." *Buchanan*, 353 N.C. at 337, 543 S.E.2d at 826. In this case, the trial court concluded that defendant was not in custody. We must determine if the trial court's conclusion of law is "legally correct reflecting a correct application of legal principles to the facts found." *State v. Golphin*, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000) (citation and internal quotes omitted). Uncontested evidence supports the trial court's findings of fact that defendant went to the Sheriff's Department voluntarily. Officer Miller told defendant he was free to leave, and that he did not have to answer questions.

"[T]he appropriate inquiry in determining whether a defendant is 'in custody' for the purposes of *Miranda* is, based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Buchanan* at 339, 543 S.E.2d at 828 (citations omitted). Therefore, even if a defendant is not formally arrested, he may nevertheless be considered in custody if he is subjected to an objective constraint of freedom capable of converting the formerly noncustodial situation into one in which *Miranda* rights apply. *See Buchanan*, 353 N.C. at 338-39, 543 S.E.2d at 827-28. Thus, the key inquiry in the case before us is whether in the totality of the circumstances, there was a restraint on defendant's freedom of movement of the degree associated with a formal arrest. *Id.* at 339, 543 S.E.2d at 828. Our Supreme Court carved rather narrow circumstances in *Buchanan* which give rise to such restraint. The use of locked doors, applied handcuffs, or posted guards are circumstances which might rise to the level of formal restraint. *Id.*

In the present case, the trial court properly applied this standard to conclude defendant was not subjected to a degree of restraint associated with a formal arrest. Defendant was placed in an unlocked interview room, without handcuffs. He was free to visit the restroom and smoke a cigarette while in the company of a single officer. Defendant was also allowed to leave the Sheriff's Department after the interview concluded. Since defendant was not in actual or constructive custody, *Miranda* warnings were not required.

Defendant argues that even if his *Miranda* rights had not attached, his question about whether he needed an attorney rendered his statement inadmissible. Defendant relies upon North Carolina case law which holds interrogations must cease after an ambiguous

invocation of counsel. *State v. Torres*, 330 N.C. 517, 529, 412 S.E.2d 20, 27 (1992). However, subsequent to *Torres*, decisions of the United States Supreme Court have more precisely defined the requirements for invoking one's right to counsel. A suspect must unambiguously request counsel to warrant the cessation of questions and "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 129 L. Ed. 2d 362, 371 (1994). Police may continue to question suspects until the individual suspect "actually requests" an attorney. *Id.* at 462, 129 L. Ed. 2d at 373; *see State v. Hyatt*, 355 N.C. 642, 655, 566 S.E.2d 61, 70 (2002).

In this case, defendant merely asked whether he needed an attorney, not that he actually wanted an attorney. Defendant's ambiguous statement fails to meet the bright line test established by *Davis* as a guide for police in investigation and interrogation. Since defendant did not invoke his right to counsel, his answers to Officer Miller's questions were admissible. The trial court concluded defendant was not in custody. Defendant was subjected neither to a formal arrest nor to a restraint on freedom of movement to a degree associated with a formal arrest. Defendant did not unambiguously express his intent to have the aid of counsel. Therefore, he did not invoke his right to counsel, thereby requiring that the questioning cease.

We hold the trial court did not err in denying defendant's motion to suppress his statements and we affirm the decision of the trial court.

Affirmed.

Judges WALKER and CAMPBELL concur.