**STATE v. GRAHAM**

[223 N.C. App. 150 (2012)]

———————

STATE OF NORTH CAROLINA v. WALTER HAYES GRAHAM

No. COA12-258

(Filed 16 October 2012)

**1. Appeal and Error—plain error—testimony elicited by defendant**

There was no plain error in a prosecution arising from the
sexual abuse of a child in the admission of an emergency room

**STATE v. GRAHAM**

[223 N.C. App. 150 (2012)]

doctor's testimony about the victim's credibility. Defendant both elicited the testimony and failed to object to its admission and may not claim plain error.

**2. Confessions and Incriminating Statements—voluntariness— no plain error**

There was no plain error in the trial court's findings and conclusions concerning the voluntariness of defendant's confession where the court found that defendant was not in custody and *Miranda* warnings were not required; that defendant was coherent, unimpaired, and gave reasonable answers to the questions; and that the interview lasted one hour.

**3. Confessions and Incriminating Statements—voluntariness— false hope of leniency**

There was no plain error in the admission of defendant's confession even though defendant contended that the confession was involuntary because he was induced to confess by false hope of leniency. There was no direct promise to defendant that he would receive a lesser charge or no charge should he confess.

**4. Confessions and Incriminating Statements—voluntariness— friendship with officer—shared racial background**

There was no plain error in the admission of a confession that defendant contended was involuntary in that it was induced by a shared racial background and friendship with an officer. Defendant did not show that the officer's reference to race was coercive and a mere reference to friendship is not enough to show plain error, especially where the friendship lacked intimacy.

**5. Confessions and Incriminating Statements—voluntariness— questions about religious belief**

There was no plain error in the admission of a confession which defendant contended was involuntary in that it was induced by questions regarding whether defendant went to church or believed in God. There was no indication that defendant's will was affected, the line of questioning was brief and did not directly elicit defendant's admission, and there was no indication of a change in defendant's demeanor.

**6. Confessions and Incriminating Statements—voluntariness— deception—no plain error**

There was no plain error in the admission of defendant's confession even though he contended that it was involuntary in that

it was obtained through deceptive statements regarding the polygraph and DNA. Deception is not dispositive where the confession is otherwise voluntary; such statements generally do not affect the reliability of the confession.

**7. Evidence—prior misconduct—door opened on direct examination**

In a prosecution for sexual offenses against a child, defendant's statements on direct examination opened the door for the State to inquire on cross-examination about a prior Michigan investigation for similar misconduct.

**8. Confessions and Incriminating Statements—admission— statement of other misconduct—intent and identity—not unduly prejudicial**

Defendant's statement in a prosecution arising from sexual offenses against a child that he touched five to ten other boys was an admission under N.C.G.S. § 8C-1, Rules 801(d)(A) and 404(b) for the purpose of showing defendant's identity as the perpetrator and his intent. There was nothing in the record suggesting that the trial court abused its discretion in allowing this evidence under N.C.G.S. § 8C-1, Rule 403.

Appeal by Defendant from judgment entered 13 May 2011 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 28 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Margaret A. Force, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for Defendant.*

BEASLEY, Judge.

Walter Hayes Graham (Defendant) appeals from judgment entered on his conviction for one count of taking indecent liberties with a child, one count of simple assault for acts committed upon a juvenile, and two counts of first-degree sexual offense for acts committed upon a child. For the following reasons, we find no error.

On 27 March 2009, two twelve-year-old boys, J.C.[1] and B.L. spent the night at Defendant's house. Defendant was a youth basketball

---

1. To protect the privacy of the minor children, their initials are used in this opinion.

coach and intended to take the boys to a basketball game the following morning. This was J.C.'s second time spending the night at Defendant's house; B.L. had spent the night numerous times over the past year or two. Defendant slept on the floor between the two boys that night.

Around midnight, J.C.'s mother awoke to J.C. banging on the door of their home wearing nothing but his underwear and holding his other belongings. J.C. told his mother that before he had fallen asleep, Defendant pulled him close, reached under his boxer shorts, touched him "on his private area" twice and licked his ear. J.C. got up, collected his belongings from the back room, and went to the bathroom. He turned the faucet on, pretending that he was washing his hands, then jumped out of the window. J.C. took his bike from the backyard and rode straight home.

J.C.'s mother immediately called 911. Before police arrived, Defendant appeared in his truck with B.L. J.C.'s mother informed Defendant that she had called the police and told B.L. to come in the house. Defendant left and B.L. entered the house, whereupon he immediately started to cry. J.C.'s mother called B.L.'s parents to inform them of Defendant's actions and they picked him up.

That same night, J.C. went to the emergency room. J.C. told a nurse of Defendant's actions. J.C. was examined by a doctor and a swab sample was taken from his ear for DNA evidence, which later indicated that Defendant could not be eliminated as the source of the other previously identified DNA. B.L. eventually disclosed, upon medical examination, that Defendant had engaged in sexual acts with him, specifically that Defendant touched his "wiener" with his hand and his mouth, and on more than one occasion, had "put his wiener in his back private where he pooped".

Prior to trial, Defendant made a Motion to Suppress his confession and a motion *in limine* to prohibit any reference to prior bad acts of Defendant, specifically a previous investigation in Michigan, each of which the trial court denied. Defendant did not object to the admission of the confession at trial.

Defendant's trial began on 9 May 2011. Defendant testified on his own behalf, denying any inappropriate behavior. The jury convicted Defendant on all counts.

[1] Defendant first argues that the trial court erred by allowing the emergency room doctor who examined B.L. to testify as to B.L.'s credibility. We disagree.

Where a defendant failed to object to the admission of evidence at trial, on appeal, the admission will be reviewed for plain error. *State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983). The error must be "so basic, prejudicial, and lacking in its elements that justice was not done." *State v. Prevatte*, 356 N.C. 178, 258, 570 S.E.2d 440, 484 (2002). Plain error review places "the burden . . . on the defendant to show that absent the error the jury probably would have reached a different verdict." *State v. Bellamy*, 159 N.C. App. 143, 147, 582 S.E.2d 663, 667 (2003)(internal quotation marks and citations omitted).

We reject Defendant's argument that the emergency room doctor's testimony as to B.L.'s credibility is plain error, as the evidence that Defendant now objects to was elicited on his own cross-examination of the expert witness. "Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *State v. Fraley*, 202 N.C. App. 457, 465, 688 S.E.2d 778, 785, *disc. review denied*, 364 N.C. 243, 698 S.E.2d 660 (2010)(citations omitted). Here, Defendant both elicited the testimony and failed to object to its admission. As such, Defendant may not claim plain error resulted from this testimony.

**[2]** Defendant next argues that the trial court erred by admitting Defendant's confession into evidence because it was involuntary and that his repeated denial of his guilt shows his will not to confess was eventually overborne. We disagree.

"It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001)(internal quotation marks and citations omitted). The trial court's conclusions of law from those facts are fully reviewable where the issue has been preserved for appeal. *See State v. Pruitt*, 286 N.C. 442, 454, 212 S.E.2d 92, 100 (1975). Without such preservation, we review the trial court's conclusions of law for plain error. *See Black*, 308 N.C. at 740-41, 303 S.E.2d at 806-07.

It is clear that a confession involuntarily obtained is a violation of a defendant's due process rights under the Fourteenth Amendment. *State v. Bordeaux*, 207 N.C. App. 645, 647, 701 S.E.2d 272, 274 (2010)(citations omitted). Rather, a defendant must freely choose to

**STATE v. GRAHAM**

[223 N.C. App. 150 (2012)]

make a confession, voluntarily and with understanding. *Id.* (citations omitted). In determining whether a confession was voluntary, we review the totality of the circumstances. *Id.* (citations omitted). Courts consider several factors, including

> whether defendant was in custody, whether he was deceived, whether his *Miranda* rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*Id.* at 648, 701 S.E.2d at 274 (internal quotation marks omitted).

Detectives Clark and Baggerly of the Concord Police Department were assigned to the case. On 7 April 2009, Detective Clark went to Defendant's home. Detective Clark knew Defendant from working security at the gym where Defendant coached; they initially met in 2005 or 2006. After briefly speaking with Defendant about his knowledge of the complaint, Detective Clark asked Defendant to come to the police station to answer some questions. Defendant agreed and voluntarily drove himself to the station. At the station, Defendant was not given *Miranda* warnings and agreed to provide a DNA sample.

Here, there is sufficient evidence on the record to support the trial court's findings, and thus we are bound by them. The trial court found that Defendant was not in custody, as he came to the station voluntarily, he was not restrained, he was informed of his right to leave at any time, he was informed he was not under arrest, and he was informed that he would be going home after the interview, which he did. Consequently, the trial court found the interview did not require *Miranda* warnings. The trial court also found that the Defendant was "coherent," not "sleepy," not "intoxicated or impaired," Defendant "understood all of the questions," "is obviously intelligent," and "gave reasonable answers to the questions presented." The record also clearly supports the finding that the interview lasted "exactly one hour." All of these findings support the conclusion that the confession was voluntary. Nonetheless, Defendant raises six circumstances which he claims show the involuntary nature of his confession and we address each below.

[3] First, Defendant contends that he was given a false hope of leniency if he was to confess and that additional charges would stem from continued investigation of other children.

Defendant points to the officers' offers to "help" Defendant "deal with" his "problem." Our Supreme Court has held "an improper inducement must promise relief from the criminal charge to which the confession relates, and not merely provide the defendant with a collateral advantage." *State v. Gainey*, 355 N.C. 73, 84, 558 S.E.2d 463, 471 (2002). Further, this Court has previously found a confession voluntary where there is no indication that specific preferential treatment will be given for cooperation, but the defendant is merely told that he could "help himself out by cooperating" and that cooperation would be relayed to the district attorney and the court. *State v. Houston*, 169 N.C. App. 367, 374, 610 S.E.2d 777, 783 (2005).

Similarly, here, there was no direct promise to Defendant that he would receive a lesser or no charge should he confess. Several times throughout the confession, the officers told Defendant, as Detective Clark testified, that they could not make him any promises as to the outcome, but could only inform the District Attorney that he cooperated. Defendant's assignment of error is overruled.

**[4]** Defendant next contends that the involuntary nature of the confession is evidenced by Detective Clark's reliance on his friendship with Defendant and their shared racial background. Defendant refers to a statement by Detective Clark in which he appealed to Defendant, "brother to brother", to tell the truth. The trial court did not make specific findings on this point. It did find that Detective Clark knew Defendant from various community athletic events. Defendant fails to show that the Detective's inference as to Defendant's race was coercive. This argument is overruled.

Detective Clark also repeatedly referred to Defendant as his friend and relied on this friendship to encourage truthfulness. Immediately prior to Defendant's admission that he touched J.C., Detective Clark stated:

> But I can say, hey, look, yeah, this is my friend. Yeah, he made a mistake. Yeah, he said this happened, whatever, and I'm right here on the side of him. Or I'm going to have to stand on the other side of the fence with everybody else, one of the two.

Defendant replied "I don't want you to stand on the other side of the fence. I've been knowing you for years." Defendant then asked what he needed to do and Detective Clark told him he should tell what happened; to this, Defendant replied "I did touch him." The mere reference to a friendship alone is not enough to constitute plain error, especially where that friendship lacks intimacy such as here where

Detective Clark did not even know Defendant's real name. This argument is overruled.

**[5]** Defendant contends that Detective Baggerly's questions regarding whether he went to church or believed in God renders his confession involuntary. We disagree.

Defendant argues that Detective Baggerly established Defendant's belief in God and then asked "You can sit here and look me in the eye knowing that you believe in God and tell me that you didn't do anything wrong that night?" In support of his argument, Defendant cites two cases in which courts found a confession involuntary on the ground of invocation of religious beliefs. *People v. Montano*, 226 Cal. App. 3d 914, 935, 277 Cal. Rptr. 327, 337 (1991)(finding use of a suspect's religious beliefs to obtain a confession rendered a confession involuntary); *Carley v. State*, 739 So.2d 1046, 1053 (Miss. App. 1999)(finding that religious references may be a factor which makes a confession involuntary). However, we do not find these cases analogous to this case.

The United States Supreme Court has held that questioning a suspect with regard to his or her religious beliefs does not necessarily make a subsequent confession involuntary. *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2263, 176 L. Ed. 2d 1098, *reh'g denied*, ___ U.S. ___, 177 L. Ed. 2d 1123 (2010). Instead, the Supreme Court held that the totality of the circumstances should inform the determination of voluntariness. *Id.* We are also inclined to follow the logic of other state courts holding that "[a]ppeals to religion do not render confessions involuntary unless they lead to the suspect's will being overborne." *State v. Newell*, 132 P.3d 833, 844 (Ariz. 2006)(citations omitted). Here, there is no indication that Defendant's will was affected by this line of questioning, as it was brief, did not directly elicit his admission, and there is no indication of a change in his demeanor.

**[6]** Defendant lastly argues that his confession was involuntarily obtained through deception, as evidenced by the detectives telling Defendant that he failed the polygraph and that the DNA test incriminated him.

While Defendant is correct that our Supreme Court has held that police deception is relevant to a consideration of voluntariness, it has also held that such deception is not dispositive where a confession is otherwise voluntary. *State v. Jackson*, 308 N.C. 549, 582, 304 S.E.2d 134, 152 (1983). "False statements by officers concerning evidence, as contrasted with threats or promises, have been tolerated in confes-

sion cases generally, because such statements do not affect the reliability of the confession." *Id.* Defendant's argument is overruled.

**[7]** Lastly, Defendant argues the trial court erred in allowing Defendant's statement that he was investigated in Michigan for similar sexual misconduct decades prior to this investigation and that, in addition to J.C. and B.L., Defendant admitted to touching five to ten other boys. We disagree.

Our Supreme Court has recently clarified the standard of review for questions relating to evidence admitted under Rules 404(b) and 403 of the North Carolina Rules of Evidence. *See State v. Beckelheimer*, ___ N.C. ___, 726 S.E.2d 156, 158-59 (2012).

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*Id.* at ___, 726 S.E.2d at 159. While we recognize these clear standards, we need not apply them in this case. First, with regard to the Michigan investigation, Defendant's argument is moot. Second, Defendant's argument as to the admission of touching five to ten other boys is reviewed under plain error due to Defendant's failure to object.

While the trial court denied Defendant's motion *in limine* to suppress the evidence of the prior investigation in Michigan, the jury *only* became aware of this admission during the cross-examination of Defendant. "[E]vidence which would otherwise be inadmissible may be permissible on cross-examination to correct inaccuracies or misleading omissions in the defendant's testimony or to dispel favorable inferences arising therefrom." *State v. Braxton*, 352 N.C. 158, 193, 531 S.E.2d 428, 448 (2000) (internal quotation marks omitted). On direct examination, Defendant stated that he had "never been in trouble before" and that he had no interaction with any type of police outside of his association with Detective Clark and playing community basketball with officers. These two statements "opened the door" for the State to inquire as to the Michigan investigation. It was not error to allow this evidence.

**STATE v. GRAHAM**

[223 N.C. App. 150 (2012)]

**[8]** Defendant did not object during trial or in his motion *in limine* to the admission of his statement that he touched five to ten other boys. As such, we review for plain error. *Black*, 308 N.C. at 740-41, 303 S.E.2d at 806–07.

"North Carolina's appellate courts have been markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in Rule 404(b), such as establishing the defendant's identity as the perpetrator of the crime charged." *State v. Bidgood*, 144 N.C. App. 267, 271, 550 S.E.2d 198, 201 (2001)(internal quotation marks and citations omitted). Where evidence is admitted under Rule 404(b), it must establish similarity of facts and have a "temporal proximity" to the crime charged. *Id.* at 271, 550 S.E.2d at 202. Evidence meeting the above requirements may still be excluded if it is more prejudicial than probative. N.C. Gen. Stat. §8C-1, Rule 403 (2011). Such exclusion is left to the trial court's discretion. *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990).

Here, Defendant's statement that he touched five to ten other boys is an admission under Rule 801(d)(A) and Rule 404(b) for the purpose of showing Defendant's identity as the perpetrator and his intent. The facts are similar to those *sub judice*, as Defendant was charged with touching both J.C. and B.L., who were both young boys at the time. Defendant himself connects the acts as a continuous pattern in his confession, stating "I have a problem with touching young boys, and I have had this problem since I was young." There is nothing in the record to suggest that the trial court abused its discretion in allowing this evidence under Rule 403. We therefore find no error.

No Error.

Judges MCGEE and THIGPEN concur.